# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**GLEN FRANKLIN**,
        **Plaintiff,**

    v.                                                **Case No. 17-C-251**

**NANCY BOWENS, et al.,**
        **Defendants.**

_____

## DECISION AND ORDER

Plaintiff Glen Franklin, who is a Wisconsin state prisoner and representing himself, filed this lawsuit under 42 U.S.C. § 1983, alleging that defendants were deliberately indifferent to his medical needs and did nothing to get him adequate medical care by failing to treat his stomach pain, swollen testicles, lower abdominal pain, and bloody stools. He was permitted to proceed on an Eighth Amendment deliberate indifference claim against all of the defendants. Before me now is defendants' motion for summary judgment. Because plaintiff's complaints about his medical care are, at best, disagreements with care and not constitutional violations, I will grant the defendants' motion. I will deny plaintiff's motion for the appointment of counsel.

### I. BACKGROUND[1]

*A. The Parties*

At all times relevant to this lawsuit, plaintiff was an inmate housed at Oshkosh Correctional Institution ("Oshkosh"). Docket No. 33 at ¶ 1. Nancy Bowens was an Advanced Practice Nurse Prescriber, who worked with the physicians in the Health

---

[1] The facts are taken from "Defendants' Proposed Undisputed Facts" (Docket No. 33) and "Plaintiff's Disputes to Defendants' Proposed Findings of Fact" (Docket No. 60).

Services Unit ("HSU") at Oshkosh. *Id.* at ¶ 2. Danielle Foster was the HSU Manager, *id.* at ¶ 3, and Judy Smith worked as the Warden, *id.* at ¶ 4. John Litscher was the Secretary of the Department of Corrections ("DOC"). *Id.* at ¶ 5.

*B. Plaintiff's Medical Care*

Plaintiff's current diagnoses are: external hemorrhoids, minor diverticulosis (formation of tiny pockets in the lining of the bowel, generally caused by straining during bowel movements), orchalgia (testicular pain), lower abdominal pain, and bloody stools. *Id.* at ¶ 6; Docket No. 60.

Plaintiff was seen by nursing staff on August 23, 2014 for complaints of bloody stool for approximately one week. Docket No. 33 at ¶ 7. He was assessed with hemorrhoids and provided with suppositories to address the issue. *Id.* Defendant Bowens saw plaintiff for the first time on October 1, 2014 for complaints of bright red blood from his rectum. *Id.* at ¶ 8. Plaintiff reported that the blood started abruptly about two months prior and occurred with every bowel movement, adding that he strained to pass. *Id.* at ¶ 9. After examination, Bowens assessed him with bright red blood per rectum and questioned if it was related to constipation. *Id.* at ¶ 10. Bowens discussed treatment options with plaintiff, including the issue of products like fiber, stool softeners, or laxatives, and made a plan to initiate reguloid (a fiber supplement used to treat constipation) and to follow up in six to eight weeks. *Id.* at ¶ 11. Bowens believed this was an appropriate care plan because plaintiff's described symptoms were consistent with constipation, which can be treated with use of a fiber supplement. *Id.* at ¶ 12.

Bowens followed up with plaintiff for his complaints of bloody stool and constipation on November 26, 2014. *Id.* at ¶ 13. Plaintiff told Bowens that he was utilizing the reguloid daily but was still experiencing bright red blood with defecation. *Id.* On exam, Bowens noted that his abdomen was obese, soft, non-tender with no masses, and his bowel movements indicated constipation (Type I on the Bristol Stool Scale, meaning it was hard and difficult to pass). *Id.* at ¶¶ 14-15. Bowens assessed plaintiff with bright red blood per rectum with constipation and, again, discussed his options, which included the use of a stool softener or laxative. *Id.* at ¶ 16. It was decided to discontinue the reguloid and initiate polyethylene glycol, a laxative used to treat occasional constipation, and follow up in six to eight weeks. *Id.* at ¶ 17. Bowens believed this course of treatment could successfully treat constipation. *Id.* at ¶ 18.

During a follow up appointment on January 7, 2015, plaintiff reported to Bowens that his last bowel movement was consistent with normal bowel movements and that he was taking the polyethylene glycol as directed and without significant side effects. *Id.* at ¶ 19. Bowens found that plaintiff's constipation was controlled and made a plan to continue his current treatment plan. *Id.* at ¶ 20.

On May 4, 2015, plaintiff submitted a Health Service Request complaining of pain in his lower right abdomen. *Id.* at ¶ 21. In response to his Request, Nurse Nancy Knoll-Gartner saw plaintiff the next day. *Id.* at ¶ 22. Plaintiff informed her that he was experiencing pain when he urinated. *Id.* at ¶ 23. Nurse Knoll-Gartner noted that she obtained a urine specimen to test for abnormalities in the urine (such as infection or blood). *Id.* The lab results showed no gross abnormalities, so Nurse Knoll-Gartner called the on-call physician who provided orders that plaintiff should receive ibuprofen (800

milligrams as needed every six hours for 24 hours) and to schedule a follow up with a treatment provider the next morning. *Id.* at ¶ 24.

Bowens saw plaintiff the next day—May 6, 2015—for a sick call exam concerning his complaints of right inguinal and testicular pain. *Id.* at ¶ 25. After examining plaintiff, Bowens made a plan to obtain appropriate specimens for testing, discontinue ibuprofen, and prescribe him levofloxican (an antibiotic) to treat his complaints of burning and naproxen (a non-steroidal anti-inflammatory drug) for pain. *Id.* Based on plaintiff's complaints, Bowens believed an infection was causing his symptoms and these were the proper medications to treat his symptoms. *Id.* at ¶ 27. Due to plaintiff's continued complaints of pain and blood in his stool, Bowens routed his chart to Dr. Murphy for review. *Id.* at ¶ 28.

Dr. Murphy saw plaintiff on May 19, 2015 and noted that the sharp pain in plaintiff's lower right abdomen (inguinal area) and right testicle began suddenly around April 27. *Id.* at ¶ 29. Plaintiff claimed the pain was constant with no benefit from antibiotics or ibuprofen/naproxen and also reported bright red blood per rectum for the past two weeks. *Id.* at ¶ 30. Dr. Murphy noted that plaintiff had hemorrhoids and had previously been on stool softener and reguloid, but plaintiff stopped both of them. *Id.* at ¶ 31. Based on his examination, Dr. Murphy assessed plaintiff with traumatic epididymitis, which is an inflammation of the epididymis (a tightly coiled tube near the testicles that stores and transports sperm) and causes discomfort or pain and swelling in the testicles. *Id.* at ¶ 32. Dr. Murphy made a plan to treat the testicle pain with scrotal support, meloxicam (an anti-inflammatory), and follow up appointments. *Id.* at ¶ 33.

Bowens saw plaintiff next on June 8, 2015 for loose stool. *Id.* at ¶¶ 15, 34. Plaintiff noted that the pain had decreased but he did note some bright red blood per rectum that morning. *Id.* at ¶¶ 35-36. After an exam, Bowens assessed plaintiff with gastrointestinal changes and questioned whether they were viral in origin. *Id.* at ¶ 37. Bowens discussed plaintiff's options with him, which included the use of pink bismuth or loperamide (a medication used to treat loose stools). *Id.* Bowens then made a plan to initiate loperamide and gavilax (to treat acid reflux and gas) with a follow up. *Id.* at ¶ 38. She believed this was a proper course of treatment because the treatment for viral gastritis is symptom support. *Id.* at ¶ 39.

On August 20, 2015, Bowens saw plaintiff for another appointment during which plaintiff informed her that he was experiencing bloody stools, though he reported four normal bowel movements per day. *Id.* at ¶ 40. Plaintiff told Bowens he was using the reguloid, gavilax, and stool softeners. *Id.* at ¶ 41. However, plaintiff refused to allow Bowens to perform a rectal exam, which limited Bowens' ability to diagnose and treat him. *Id.* at ¶ 42. Based on the limited exam, Bowens assessed plaintiff with bright red blood per rectum with stool and noted he had a normal colonoscopy and one normal upper endoscopy ("EGD"), which is a test to examine the lining of the esophagus, stomach, and first part of the small intestine. *Id.* at ¶ 43. Bowens found that, based on plaintiff's description, the blood was likely from hemorrhoids or fissures. *Id.* at ¶ 44. Bowens discontinued the gavilax and made a plan to refer plaintiff to Dr. Murphy for possible biopsy for his complaint of skin color changes because she was unsure of the etiology (her prior treatment for the condition was not helpful). *Id.* at ¶ 45.

Plaintiff saw Dr. Murphy on August 27, 2015. *Id.* at ¶ 46. After exam, Dr. Murphy made an order for triamcinolone for the skin color change issue and scheduled a follow up appointment for two months out. *Id.* at ¶ 46. Dr. Murphy did not order or schedule a biopsy, however. *Id.* at ¶ 47.

Bowens saw plaintiff on November 4, 2015 for his complaints of testicular discomfort and slightly violaceous blood noted intermittently with defecation. *Id.* at ¶ 48. He reported that the onset of symptoms was abrupt and had been present for about a year. *Id.* at ¶ 49. He stated that he did not believe that his symptoms had gotten better or worse and denied significant exercise, trauma, history of sexually transmitted infections, or straining to defecate. *Id.* at ¶ 50. Plaintiff did, however, note dysuria and urinary frequency. *Id.* After an exam, Bowens assessed plaintiff with hemorrhoids but found the etiology of his testicular pain and dysuria unclear. *Id.* at ¶ 51. She prescribed hemorrhoid ointment and witch hazel pads, ordered a urinalysis, and advised plaintiff to notify the HSU of the efficacy of the interventions. *Id.* at ¶ 52.

Plaintiff saw Bowens again on January 5, 2016, at which time plaintiff reported persistent blood per rectum that varies in color from bright red to violaceous. *Id.* at ¶ 54. He further reported one to three bowel movements a day, with some being normal and sometimes having constipation. *Id.* at ¶ 55. Plaintiff denied bloating, cramping, or nocturnal defecation and reported using stool softener and reguloid as directed. *Id.* at ¶ 56. Based on her exam, Bowens made a plan to obtain a fecal occult blood test (FOBT), which tests for hidden blood in the stool, and to consider a repeat colonoscopy as recommended by Up to Date, a medical professional reference provided by the Bureau of Health Services for their advanced care providers. *Id.* at ¶ 57.

6

During an appointment with Bowens on February 15, 2016, plaintiff reported testicular pain (orcialgia) with defecation and that the prescribed meloxicam was not helpful. *Id.* at ¶ 59. Bowens assessed plaintiff with orchialgia of unclear etiology and made a plan to schedule a colonoscopy, as well as rule out sexually transmitted infections and prostatitis by obtaining urine specimens. *Id.* at ¶ 60. She also ordered a prostate massage urinalysis and discontinued the prescription for meloxicam. *Id.* at ¶ 61. She believed this was appropriate given plaintiff's present symptoms and her exam findings. *Id.* at ¶ 62.

Plaintiff was seen on February 24, 2015 for a pre- and post-prostate massage urinalysis. *Id.* at ¶ 63. During the prostate massage, plaintiff reported significant discomfort, which could have indicated acute versus chronic infection and the procedure was halted. *Id.* at ¶ 64. Bowens made a treatment plan to treat plaintiff for prostatitis with antibiotics and to follow up in six to eight weeks. *Id.* at ¶ 65. She based this decision on the prostate massage, which she believed showed acute infection. *Id.* On March 3, 2016, Bowens made an order the plaintiff was to come to the HSU when his gastrointestinal symptoms were noted and that he could be housed in the HSU as needed during symptoms for assessment of testicle swelling and stool quality. *Id.* at ¶ 67.

Plaintiff then underwent two tests. First, an EGD to examine the gastrointestinal tract, performed on March 10, 2016, showed no abnormal results. *Id.* at ¶ 68. A colonoscopy performed on March 23, 2016 found no abnormalities of concern. *Id.* at ¶ 69. Bowens re-started his prescription of reguloid on March 23, 2016. *Id.* at ¶ 70. Bowens met with plaintiff again on April 14, 2016 to assess his complaints of testicular pain and swelling. *Id.* at ¶ 71. He reported that the swelling had resolved but intermittent pain persisted—the pain came on suddenly with a precipitating factor and resolved

7

spontaneously. *Id.* at ¶ 72. He further claimed that the prescribed pain medication was only somewhat effective and he had completed his antibiotics as directed without side effect. *Id.* at ¶ 73. After exam, Bowens assessed plaintiff with orchialgia, prescribed him naproxen for pain, and made a plan to obtain a scrotal ultrasound and follow up in June. *Id.* at ¶ 74. Plaintiff had a testicular ultrasound on April 25, 2016, which had normal results. *Id.* at ¶ 76.

At a follow up exam with Bowens on June 13, 2016, plaintiff reported that the orchialgia persisted and that his prescription of naproxen for pain increased rectal bleeding. *Id.* at ¶ 77. Bowens discontinued the naproxen and ordered plaintiff to follow up as necessary. *Id.* at ¶ 78.

Bowens saw plaintiff the next time almost ten months later, on April 18, 2017. *Id.* at ¶ 79. He reported abdominal pain with light touch at all quadrants with positive Carnett's sign (Carnett's sign is a finding on clinical examination in which abdominal pain remains unchanged or decreased when muscles of the abdominal wall are tensed). *Id.* Bowens discussed obtaining labs but plaintiff informed her that he would refuse labs, stating "I got things goin' on in my life." *Id.* at ¶ 80. Bowens still scheduled the labs, hoping plaintiff would be amenable at the time the labs were set to be drawn and planned to follow up with him. *Id.* at ¶ 81. When Bowens met with plaintiff on June 28, 2017, the examination was normal with exception of elevated blood pressure and plaintiff refused an increase in blood pressure medication. *Id.* at ¶ 82. Future blood pressure checks, laboratory testing, and follow up appointments for continued evaluation and treatments of his hypertension, abnormal lipid levels, and hemorrhoids are pending. *Id.* at ¶ 83.

*C. Litscher's, Smith's, and Foster's Involvement*

Plaintiff filed two inmate complaints regarding his allegations that Bowens was not providing him with proper medical care. *Id.* at ¶ 95. None of the defendants—Litscher, Smith, or Foster—had any personal involvement in the decision to dismiss these two inmate complaints. *Id.* at ¶ 96. Foster did, however, receive a copy of the decisions dismissing each of the inmate complaints. *Id.* at ¶ 97. Foster reviewed the investigations that had been conducted by the Inmate Complaint Examiners and reviewing authorities and determined that while plaintiff disagreed with the care he was receiving, the care was proper and she had no reason to believe he was being denied medical care. *Id.* at ¶¶ 98, 99. Other than Foster being provided with a copy of the two dismissed inmate complaints, Litscher, Smith, and Foster did not receive any correspondence, Health Service Requests, or other documents where plaintiff complained about the medical care he was being provided. *Id.* at ¶ 100.

## II. ANALYSIS

*A. Summary Judgment Standard*

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding defendants' motion, I resolve all factual disputes and make all reasonable factual inferences in favor of plaintiff, who is the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

9

*B. Plaintiff's Medical Treatment*

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a deliberate-indifference claim, a plaintiff must first show that he has "a medical condition 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Edwards v. Snyder*, 478 F.3d 827, 830–31(7th Cir. 2007) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). He must then show "that the prison official[s] knew of 'a substantial risk of harm to [him] and disregarded the risk.'" *Id.* at 831 (first quoting *Greeno*, 414 F.3d at 653; and then citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Medical malpractice or a disagreement as to the proper course of medical treatment is not deliberate indifference. *Id.* (first citing *Estelle*, 429 U.S. at 107; then citing *Greeno*, 414 F.3d at 653; and then citing *Estate of Cody by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). In order to survive summary judgment, the evidence must be such that a reasonable jury "could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Id.* (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

The defendants do not argue that plaintiff does not have a serious medical condition, so the question is whether, construing the evidence in plaintiff's favor, a reasonable jury could conclude that the defendants acted with "a culpable state of mind," *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006) (internal citation omitted),

disregarding risks to his health. They did not. In making this finding, I have reviewed the "totality of [plaintiff's] medical care." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999). Bowens saw plaintiff regularly about his complaints of constipation, bloody stool, hemorrhoids, and testicular pain. She prescribed him various medications to address symptoms as well as underlying causes for his symptoms. She ordered testing to try to determine the etiology of plaintiff's symptoms, including a fecal occult blood test, a repeat colonoscopy and EGD, and several urinalyses. All of that objective testing came back with normal results, so Bowens proceeded with treatment based on her training and experience. At one point, Bowens told plaintiff that he could be housed in HSU as needed during symptoms for assessment of his testicle swelling and stool quality. And, contrary to allegations in plaintiff's complaint, the physicians he saw did not recommend any additional or different treatment. Furthermore, plaintiff stopped medication that was helping him on his own accord and at least once refused to allow Bowens to examine him. In sum, plaintiff has no evidence that Bowens' treatment decisions were ones that "no minimally competent professional" would make "under those circumstances." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Plaintiff's complaints amount to nothing more than a disagreement with Bowens' treatment decisions. Bowens is entitled to summary judgment.

As for the remaining defendants, plaintiff claims that Litscher, Smith, and Foster were deliberately indifferent to his medical needs because they, according to him, knew of his inadequate medical care and failed to do anything to get him the care he needed. Based on the evidence in record, the only person who actually knew about the complaints plaintiff filed was Foster, but as an administrator not providing medical treatment, she was

entitled to defer to plaintiff's medical providers. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (internal citations omitted).

There is no evidence that Litscher or Smith knew about the complaints before this lawsuit. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). There is no supervisory liability, collective liability, or vicarious liability under 42 U.S.C. § 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). The fact of Litscher's and Smith's job titles does not make them liable, as plaintiff argues. "Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Therefore, Foster, Litscher, and Smith are entitled to summary judgment. Not only does the evidence of record show that plaintiff's claims against them fail on their own, they also fail because, as I have already found, the medical care plaintiff received was not constitutionally deficient.

*C. Plaintiff's Motion for the Appointment of Counsel*

Following the conclusion of briefing, plaintiff submitted a renewed motion for the appointment of counsel. He has submitted other previous motions, and most recently I explained to him that I would not grant his motion for the appointment of counsel because I believed that he was capable of responding to the defendants' motion for summary judgment without assistance of counsel. Docket No. 58. Now that I have actually reviewed the parties' summary-judgment submissions, including plaintiff's medical records, I am satisfied that the assistance of counsel would not have altered the outcome. My decision

is based on plaintiff's treatment records, which reflect responsive and appropriate care for his medical concerns, as well as his own allegations, and plaintiff's complaint does not amount to more than disagreement with the care he received. Therefore, appointing an attorney would not have changed my ruling on the defendants' motion for summary judgment. Therefore, I will deny his motion for the appointment of counsel.

## ORDER

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment (Docket No. 28) is **GRANTED**. Judgment will be entered accordingly.

**IT IS ALSO ORDERED** that plaintiff's renewed motion to appoint counsel (Docket No. 63) is **DENIED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally

no more than one year after the entry of the judgment.  The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 30th day of August, 2018.


                                        s/Lynn Adelman_____
                                        LYNN ADELMAN
                                        United States District Judge